In the matter of the probate of the last will and testament of ANASTASIA DAVIS, and of letters testamentary thereon.

[Submitted October 29th, 1907. Decided January 8th, 1908.]

1. Where testatrix had testamentary capacity at the time she executed a will, with all the formalities required to constitute a testamentary disposition, it would be presumed that the instrument expressed her will, and the burden is on one claiming it to have been the result of undue influence to establish, not only that such influence existed, but that it produced a testamentary disposition which testatrix would not have made if she had not been coerced thereby.

2. If the will objected to for undue influence benefited one who, at the time, occupied a confidential relation to testatrix, or stood in a position of trust and confidence to her, the burden was on the proponent to establish that the will was the uncoerced act of the testatrix.

3. The inference of undue influence will not be drawn alone from proof of opportunity to exert it, nor will influence be deemed undue which may reasonably be inferred to have been produced by kind attentions and services rendered by the beneficiary.

4. Declarations of testatrix, before and after the execution of the will, are only admissible, on the issue of testamentary capacity, to indicate a state of mind of testatrix, and are inadmissible to form a basis for an inference of undue influence.

5. In a will contest, evidence examined and *held* insufficient to justify a finding of undue influence.

---

On appeal from the Hudson county orphans court.

*Mr. Charles J. Roe,* for the appellant.

*Mr. George T. Vickers,* for the respondent.

MAGIE, ORDINARY.

The appellant, John J. Byrnes, propounded for probate, in Hudson county, a paper-writing which he claimed to be the last will and testament of Anastasia Davis, by which he was appointed executor.

Anna Gibson, one of the grandchildren of the deceased, had filed a caveat against the probate, and the contest thus inaugurated came on for hearing before the orphans court of that county.

The admission of the paper-writing to probate was contested on two grounds: (1) that the testatrix lacked testamentary capacity at the time it was made; and (2) that the testatrix had been unduly influenced by the proponent and his wife, Ella, who was a sister of the caveator and also a grandchild of the deceased. After the hearing, the orphans court declined to admit the will to probate and made a decree to that effect. From that decree this appeal has been taken.

The conclusions of the learned judge of the orphans court disclose that he found the testatrix to have been of sound mind, and to have possessed capacity to make a testamentary disposition of her property. His finding against the will was put on the sole ground that the will was the product of that kind of influence which is called undue, exerted upon the testatrix by the proponent and his wife.

As my review of the case has resulted adversely to the conclusions of the judge of the orphans court in respect to the ground on which he based them, it became necessary that I should review his finding upon the point of capacity. I have therefore examined the evidence with care, and find absolutely no proofs upon which it could be adjudged that the testatrix lacked testamentary capacity.

The question is therefore whether the decree is to be supported upon the evidence shown in the transcript.

As it is established thereby that the deceased possessed entire testamentary capacity at the time, and that the paper was executed with all the formalities required to constitute it a testamentary disposition of property, there is a presumption that it expressed the will of the deceased, and one who contests its

validity on the ground that it was the product of influence, must primarily establish that such influence existed as is called undue, that is, such influence as dominated the will of testatrix and produced a testamentary disposition which testatrix would not have made if not coerced by such influence.

If the will thus executed benefits one who at the time occupied to the testatrix a confidential relation, or stood in a position of trust and confidence to her, the burden of proof on this subject is shifted to the proponent thereof, and upon him it devolves to establish that the will was the uncoerced act of the deceased. *Barkman* v. *Richards, 63 N. J. Eq. (18 Dick.) 211; Sparks Case, 63 N. J. Eq. (18 Dick.) 242; Armstrong* v. *Armstrong, 69 N. J. Eq. (3 Robb.) 817, 824.*

The contested paper was executed in the house of the proponent, who, with his wife, was the principal beneficiary thereunder. Testatrix had been brought to their house within forty-eight hours previous, suffering under a mortal disease from which she died some weeks later. So serious was her physical condition at that time, that under the advice of the physician who examined her, a priest of her church was sent for, who administered to her the last sacrament. There was, therefore, opportunity for the exertion of influence by the proponent and his wife.

But the inference of dominating influence will not be drawn alone from proof of opportunity to exert it, nor will influence be deemed to be dominating which may reasonably be inferred to have been produced by kind attentions and services rendered by a beneficiary.

From the conclusions filed by the learned judge of the orphans court, it is obvious that he found no direct evidence of the exertion of any influence by proponent or his wife. There appears no such evidence, and both beneficiaries deny that they attempted to influence deceased. The conclusions were evidently based upon inferences drawn by the judge from facts proved. In the proof upon which the learned judge relied (as appears from his conclusions), statements made by the testatrix, both before and after the execution of the will, were admitted and relied upon. If they were entirely rejected, there

would be no evidence to justify any inference whatever of the exertion of undue influence.

The settled doctrine in this state is that statements and declarations made by a testatrix are not admissible as evidence of facts from which undue influence will be inferred. They are only admissible to indicate the state of mind of the person whose testamentary capacity is in question. *Rusling* v. *Rusling, 36 N. J. Eq. (9 Stew.) 603, 607,* and cases there cited. *Middleditch* v. *Williams, 45 N. J. Eq. (18 Stew.) 726.*

Applying this principle, many .of the statements of the deceased possessed no probative force whatever. They do not tend to establish that the proponent of the will, at previous times. was trying to get testatrix's money, or was after her money. Of this charge there is no proof other than that exhibited by evidence of statements of testatrix long prior to the execution of the will, which do not amount to proof.

But there was in some of the statements proved to have been made by the testatrix, evidence indicating a condition of mind toward the proponent, though not toward his wife. From these statements it would appear that the testatrix used contemptuous expressions respecting the proponent, from which it might be reasonably inferred that, some time before the making of this instrument, she disliked him, though there is no proof of any conduct on his part which would justify such dislike.

There was proof that at a previous time testatrix, when living with her granddaughter, the contestant of this will, had made a will in favor of that granddaughter, giving to her about the same benefit as this will gives to the proponent and his wife, another grandchild. Both wills indicated testatrix's intent not to distribute her property among all her grandchildren and children of a deceased grandchild, but to make a principal beneficiary, remembering each of the grandchildren and great-grandchildren with the bequest of a small sum.

It is obvious that the only support to the decree can be found in the inference to be fairly drawn from the changed purpose of the deceased, indicated by the last will when contrasted with the former will. This will gave a benefit to the proponent, for whom she had at a previous time expressed a dislike, but it also

gave a benefit to his wife, whom she did not appear to dislike. From this, it is claimed in the argument that a necessary inference is that proponent exerted, when he had an opportunity, a dominating influence that coerced the testatrix to change her purpose and to make him a beneficiary.

But apart from the proof that proponent objected to the expressed purpose to make him a beneficiary, another inference may be fairly drawn from all the facts. An inference of that kind of fraudulent conduct which consists in extorting benefits from a person almost *in extremis,* ought not to be made, if another inference not involving fraudulent conduct can reasonably be made. That a fair inference from the facts is that this will was made because of the kind offices then being rendered to testatrix by proponent and his wife, I think is clear. As has been before stated, she had lived for some time with her grandchild, the contestant. The latter was about to take into her household the children of a deceased sister. The grandmother, therefore, left her, though I think, without any feeling of animosity or dislike. Testatrix went to live alone, and upon one day when the wife of proponent went to visit her, she found her sick in bed, unable to care for herself, and indebted to the casual attention of a neighbor to procure a pitcher of water. Proponent's wife was unable to remain with her grandmother during the day, but returned to her in the evening, proponent accompanying his wife. They endeavored to make the testatrix comfortable for the night, during which she remained entirely alone. The next day proponent and his wife both went there again. They found the testatrix very seriously ill. They proposed that she should go to the house of her other granddaughter, with whom she had previously lived, or to a hospital, but she refused to do so.

Proponent and his wife appear to have lived in a flat, without a spare room. They proposed, however, after testatrix refused to go to her other granddaughter or to a hospital, to take testatrix to their home and install her in a room which they used as a sitting-room. This she consented to, and they took her immediately, or during the morning, and gave up to her the sitting-room. She was then so ill that they sent for a doctor of whom

she spoke.   As he was not to be found, testatrix suggested that
proponent and his wife should call in their own doctor.   This
doctor pronounced her seriously ill and threatened with pneu-
monia, and it was afterwards that the priest was sent for.   The
next day testatrix directed a lawyer, whom she knew and who
lived in the neighborhood, to be called, and she gave him in-
structions for the will in question, being then in the complete
possession of her faculties.   During the giving of these instruc-
tions, her granddaughter, proponent's wife, was in the room,
but took no part in the discussion about her action.   There is
some evidence that proponent himself was present during a part
of the time and remonstrated with her in respect to his being
included as a beneficiary, but testatrix persisted in her pre-
viously expressed determination.   The lawyer, after receiving
the instructions, wrote the will in an adjoining room, and it was
duly executed.   The testatrix lived for several weeks afterward.
Both proponent and his wife denied the exertion of any influence
whatever upon the testatrix in respect to her disposition of her
property.

It is not a necessary inference from these facts that the propo-
nent of this will, and his wife, dominated the will of testatrix
and coerced her into benefiting them by her testamentary dispo-
sition.   A fair inference is that the services which they had ren-
dered her in removing her from the room in which she might
have died alone, and taking her into their own house, and their
care for her, were the inducing influences that brought about
the changed purpose respecting her property.   Such is the in-
ference that I draw from this evidence, and it forbids the adop-
tion of the inference that there was a dominating influence ex-
erted which the testatrix could not have resisted if she had
desired to do so.

There is another circumstance pressed in the argument for
respondent, which I do not find in the proofs.

It is said that a few days after the execution of the will tes-
tatrix made a deed for the real estate of which she was seized,
which practically constituted her whole property, to the pro-
ponent and his wife.   It does appear in the evidence that she
made such a deed, but it also appears that it was made after she

had heard from another person that the contestant had declared that her grandmother was insane and incapable of making a will. The circumstance pressed is not the execution of this deed, with respect to which the same observations could be made as are made above respecting the execution of the will, but that the deed was assailed by a bill in equity, filed by the contestant against proponent and his wife, and was there declared void.

The rules of a court of equity in dealing with gifts *inter vivos* are far more rigid than those applicable to wills. This was plainly pointed out by Vice Ordinary Reed in the *Sparks Case. ubi supra.* The reason for the discrimination is obvious. A will remains ambulatory. The testator may revoke it; he may substitute another expression of his determination; or he may change it by a codicil, and his dominion over it remains complete until he dies. A deed duly executed and delivered to the grantee named therein, and recorded, is practically irrevocable unless a power of revocation is reserved to the donor.

If there was proof of a decree annulling this deed, made by the court of chancery, there is no indication in the case upon what grounds that determination was made. It is obvious that the question presented to that court in respect to the deed might have been decided on entirely different grounds from those which require a decision in respect to the previous will. My judgment must be formed upon the evidence presented in this cause with respect to the situation of the parties at the time the will was executed.

As I think the decree below is unsupportable, it must be reversed, with costs.