Essex County Orphans Court—In re Merkel.

ESSEX COUNTY ORPHANS COURT.

In the matter of the probate of a certain paper-writing pur-
porting to be the last will and testament of EMMA
MERKEL, deceased.

[Decided July 16th, 1926.]

**Wills—Probate—Will Prepared by a Person Not a Member of
the Bar at Request of Husband of One of the Beneficiaries—
Testator Afterward Sought to Change or Amend, and Asked
an Acquaintance of Beneficiary to Assist Her—This Person,
Knowing Testator Desired to Change, Deliberately Misled
Her Into Thinking the Memorandum He Prepared Would
Accomplish That Purpose—No Undue Influence Found, How-
ever, in Connection With the Will of January 21st, it is
Admitted to Probate.**

KOCHER, ADVISORY MASTER (orally).

Emma Merkel, late of the city of Newark, died on the
21st of February, 1926.   On the 23d day of January, 1926,
she .executed a paper-writing purporting to be her last will
and testament, which was prepared by one Walter R. Pruden,
who is not an attorney, but a friend of the O'Connors of
many years' standing.   He was not acquainted with Mrs.
Merkel.

Pruden testified that Mr. Patrick O'Connor, the husband
of Annie O'Connor, one of the residuary legatees named in
the will and not of kin with testator, gave him directions as
to the provisions of the proposed will, and that he made a
memorandum of the instructions so received, and consulted
with his attorney in regard to the preparation of the will.
As the result of this the will was prepared, and Mrs. Merkel,
accompanied by Mr. Patrick O'Connor, came to his office for
the purpose of executing the will.

It appears that Mrs. Merkel was sixty-seven years of age,
and that she had been a nurse in a family in Montclair for
some years, caring for an invalid child.   She, however, made
her headquarters in a house owned by a Mrs. Winans, where

Essex County Orphans Court—In re Merkel.

she had a room. It may be fairly inferred from the testimony that she had a considerable quantity of personal effects, household furniture and the like, in her room in Mrs. Winans' house, and that after the execution of the will it occurred to her that she wished to give to Mrs. Winans her personal effects contained in that room.

So far as the relations between Mrs. Merkel and the O'Connors were concerned, it was of long standing. The testimony is that she lived at her room in Winans' house when she was not on duty as a nurse, and, as I recall the testimony, she took dinner with the O'Connors practically every Sunday night and was very friendly with them. Upon one of these Sunday evenings Mr. William J. Hardy was present. He is a distant relative of the O'Connors, and the testimony is that Mrs. Merkel, either during or after the meal, requested that he do something for her. They retired to the bedroom of an uncle, and Mrs. Merkel then told him that she wished to give to Mrs. Winans her personal effects, household furniture, and so forth, which were contained in her room at the Winans' house. He thereupon prepared a paper wherein Mrs. Merkel expressed her wish that the person with whom she lived at the time of her death should receive all of her *personal property*.

The testimony is that Mr. Hardy knew of the execution of the will of the 23d of January, 1926, wherein his aunt (I think that is the relationship between them) largely participated, and he proceeded to carry out the wishes, or rather pretended to carry out the wishes, of Mrs. Merkel. His testimony in regard to the execution of this paper, which is in effect a codicil to the will of January 23d, 1926, is very significant, and I am going to read the testimony from the record.

It appears on page 20 of the record—

"*Q*. And do you know the legal requirements for the execution of a will? *A*. Yes, I worked with a notary public.

"*Q*. What are the legal requirements for the execution of a will? *A*. There is a long form that has to be drawn up.

Essex County Orphans Court—In re Merkel.

"Q. I am speaking about the execution itself now. A. I know that two people have to be present in the room, present at the time the will is signed.

"Q. You knew that? A. Yes, sir.

"Q. Then why didn't you have two people present in the room at the time? A. I did not want it to be legal.

"Q. You did not want it to be legal? A. I knew it would not be legal. * * *

"Q. You say you knew two witnesses should be present at the time testatrix signed? A. Yes, sir.

"Q. And you saw to it that two people were not present? A. Yes, sir.

"Q. Then you deliberately perpetrated a fraud? A. No, sir, I would not say that.

"Q. What would you say? A. I realized it did not amount to much.

"Q. But Mrs. Merkel wanted it done. A. I knew she intended the furniture.

"Q. That does not matter, she wanted it done. A. I was not going to be mixed up in it.

"Q. But you were mixed up in it, you were deliberately doing it in such a manner that you knew it would not be legal? A. Yes, sir.

"Q. And you deliberately perpetrated a fraud? A. Yes, sir.

"Q. You did that deliberately? A. Yes, sir."

Later on, the witness testified that at the time of the execution of this paper-writing that he did not know the requisites of a legal will, in spite of the fact of his statement that he deliberately executed the paper in question in such a manner that he knew it would be invalid. Further on he said he did not think it was a will at all, but understood it was a note to the executor of the will. I might add the paper-writing in question was executed at Mrs. Merkel's request in duplicate, and that the two copies in separate envelopes were produced in the surrogate's office for probate with the endorsement thereon in the writing of Hardy, "This is Emma Merkel's will and should not be opened until after death."

The circumstances attending the execution of this paper-writing were, as testified to by both of the witnesses thereto, that it was prepared by Hardy, signed by Mrs. Merkel and by Hardy, and thereafter signed by John H. O'Connor, a relative of the principal beneficiary, who testified that he was not present at the time either Mrs. Merkel or Hardy

signed it; that he was down in the cellar chopping wood; that Hardy came to him and requested him to come upstairs and do something for Mrs. Merkel; that he walked into the room, without a word to anybody, and that, at Mr. Hardy's request, he signed his name and walked out of the room again, without a word to anybody. This story reeks with fraud and perjury from beginning to end. There is no question whatever as to what Mrs. Merkel's intentions were. She intended that Mrs. Winans should have her personal effects in her room, while the paper-writing in question bequeaths to her Mrs. Merkel's personal property.

Hardy testifies that he did not realize, until the day after the execution of the will, that the words "personal property" meant more that Mrs. Merkel's furniture, &c., but that he made no attempt whatever to make any correction. The testimony of Hardy and of O'Connor indicated their knowledge that if this paper were admitted to probate it would entirely cut off Annie O'Connor is extremely significant. Beyond that I do not care to comment at this time.

The situation is one of such glaring fraud that I am unable to recall a decision in this state disclosing a similar state of facts. Our decisions, however, require that in the execution of a will the statutory provisions must be strictly complied with. While I have been unable to recall the case of a will or codicil deliberately executed in such a manner that it would be invalid as this was, I do, however, recollect a case of the revocation of a will procured by fraud. In *Sickle's Case, 63 N. J. Eq. 233, 238; affirmed, 64 N. J. Eq. 791,* the testator, having thrown the will into the fire, a relative snatched it up, and then, upon the request of the testator to deliver it back to him, pretended to throw it into the fire, but did not do so. The will was held unrevoked and entitled to probate, the reason being that the statute expressly provides the method of revocation of a will, exactly as it expressly provides for the execution of a will. In this case we have the case of an attempt to revoke a will prevented by fraud. In the case at bar we have the case of an attempt to make a codicil frustrated by fraud. The result is that the

codicil to the will, not having been executed in accordance with the statute, must be denied probate.

It is abundantly proven that the will of January 23d, 1926, was executed as prescribed by law. There is no contention that I recall to the contrary.

Mrs. Merkel was a woman of megre education. She could write her name, but her education apparently went little further than that. She had been employed ever since the death of her husband, some seven or eight years prior to her death, and had accumulated a considerable amount of money, the amount of which is not in evidence. At any rate, she had four or five bank accounts. Apparently, she relied upon one May Lavino for assistance in regard to her financial affairs. It was to her that she gave moneys to be deposited in the various banks, and it was to her that she went for assistance in regard to her financial affairs. May Lavino is not mentioned in the will.

It is urged that the will is invalid on the ground of undue influence.

Undue influence has been defined to be such influence as dominates the will of the testator, and produces a testamentary disposition which the testator would not have made if not coerced by such influence. *Byrnes* v. *Gibson, 68 Atl. Rep. 756.* It must be such as to destroy the free agency of the testator and amount to moral or physical coercion. It must be proved, moreover, that the act done was the result of coercion. There must be a control exercised over the mind of the testator or an importunity practiced which he could not resist or to which he yielded for the sake of peace. There are many cases in this state sustaining these principles; typical is the case of *In re Tunison's Will, 83 N. J. Eq. 277; affirmed, 93 Atl. Rep. 1087.* But it is contended that the circumstances surrounding the execution of this will are suspicious. It has been held, however, that suspicious circumstances, susceptible of an interpretation which favors honesty, are insufficient to establish undue influence. This principle is stated in many cases, of which *In re Gleespin, 26 N. J. Eq. 523,* is a type.

Recurring now to the facts in this case. Testatrix was, to all intents and purposes, alone in the world, with the exception of her brother, who saw her occasionally. An intimacy had grown up between her and the O'Connors, and the O'Connors apparently treated her with great kindness. She took her meals with them constantly, and, as I adverted to heretofore, she was entertained at dinner, if not regularly, practically every Sunday. There are further stories of parties given by the O'Connors for her benefit, so that it is evident that a friendship grew up between them.

Now, it is well settled that the influence of affection and kind offices, unconnected with fraud or contrivance, though it induces gratitude and testamentary recompense, is not undue. The cases supporting this theory are so voluminous that I will content myself by citing *In re Ealley's Will, 82 N. J. Eq. 591.*

While it is true that the execution of the will was brought about by the husband of Mrs. O'Connor, one of the favored beneficiaries therein mentioned, it is settled that the legal presumption is always in favor of a will, and one who contests its validity on the ground that it was the product of undue influence, must primarily establish that such influence existed as is called undue. *In re Craft's Estate, 85 N. J. Eq. 125.*

Whether in any view of the case undue influence was exerted upon the testatrix must be determined upon the facts. It is not a presumption, but a conclusion, and the mere possession of influence and opportunity and motive to exercise it affords no presumption of undue influence. It must appear either directly, or be justified from facts proven, that the influence was exerted and operated to dominate the testatrix and to coerce her to make a disposition of her property which she would not otherwise have made. The cases upon this subject are voluminous, and I will content myself with citing the case of *In re Anastasia Davis, 73 N. J. Eq. 617.*

But it is contended that the fact that the husband of Mrs. O'Connor gave the directions in regard to the execution of the will, of itself shifts the burden of proof and requires the

proponent to prove the lack of undue influence.  The general rule is that the party alleging fraud or undue influence must prove it either directly or by establishing such circumstances as will warrant a presumption against the instrument which, in the absence of affirmative evidence showing the paper was the voluntary act of the testatrix, must control as a conclusion of facts.  The burden is upon the party claiming the will to have been the result of undue influence, to establish, not only that such influence existed, but that it produced a testamentary disposition which the testatrix would not have made had she not been coerced.

In the very recent case of *In re Young's Estate, 90 N. J. Eq. 236,* it was held that a testator has the right to the aid of any person she may think proper to select to aid her in preparing her will, and if she exercises that right, without improper influence, though she selects a person whom she intends to make one of her beneficiaries, that fact, in the absence of evidence showing an abuse of confidence, is no reason why probate should be denied of the will.

Coming now to the facts in the case under consideration, the testimony is barren of the slightest evidence showing that the O'Connors exercised any influence of any kind or character upon the testatrix, or that confidential relations existed between them.  If there was a person standing in the confidential relationship to the testatrix it was May Lavino, who is not mentioned in the will at all.  That being so, I am constrained to advise a decree admitting the will of January 23d, 1926, to probate.